MAX N. TOBIAS, JR., Judge.
hThe plaintiff/appellant, Patrick Chaplain, appeals from a judgment that granted the motion for summary judgment filed by defendant/appellee, Peter J. Dimitri, whereby Mr. Chaplain’s original and first supplemental and amending petitions were dismissed with prejudice. For the reasons that follow, we affirm the judgment of the court below.
On 17 August 2009, Mr. Chaplain was performing carpentry work at a house being renovated by Mr. Dimitri. Mr. Chaplain was cutting prefinished wood flooring on a table saw owned by Mr. Dimitri, when Mr. Chaplain’s left hand was struck by the table saw blade, resulting in the amputation of several fingers. The safety guard was not on the table saw.
Mr. Chaplain filed suit against (a) Mr. Dimitri and his company, Beck Housing LLC, for negligence, and (b) Makita U.S.A. and Makita Corporation of America (collectively, “Makita”), the table saw manufacturer, alleging a defect in the product. Makita was dismisse<l from the suit by way of summary judgment.[1] Mr. Dimitri’s first motion for summary judgment was denied, but was later granted |?by the trial court. No written reasons for judgment were given by the trial court. This timely appeal by Mr. Chaplain followed.
The standard of review of a trial court’s ruling granting a motion for summary judgment, pursuant to La. C.C.P. arts. 966 and 967, and the jurisprudence, is well-settled. As this court has noted, it can be summarized as follows:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to *224 determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law.
[[Image here]]
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party’s claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue.
Mandina, Inc. v. O’Brien, 13-0085, pp. 8-9 (La.App. 4 Cir. 7/31/13), 156 So.3d 99, 104-05 (collecting cases) [emphasis supplied.].
The facts relevant to this appeal reveal that Mr. Chaplain had been a carpenter for approximately 30 years. His “on-the-job” training taught him to use power tools, but “not always in the proper manner.” He had worked with prefinished wood floorboards on many occasions. Mr. Chaplain testified that none of the table saws he had worked with before the accident had a blade guard, although he had seen a blade guard on a table saw. He admitted that he had seen operating manuals for table saws, but had never read them; he also stated that he had seen the warning labels indicating that the table saw should be used only with the guard in place.
Mr. Chaplain had a particular technique when working with the prefinished floorboards that required a table saw and the following steps: (1) drop the wood onto the blade; (2) run the flooring across the table saw; and (3) make sure that the wood is always in contact with the blade. Mr. Chaplain admitted in his deposition that he had utilized this technique quite often and it was a way to make an “L-shaped” cut into the wood. However, in order to use a table saw to perform this task, the blade guard could not be installed on the table saw. If the guard had been in place, he identified other tools that could have been used to perform the cut.
Mr. Dimitri hired Mr. Chaplain to assist him in remodeling a house in Me-tairie, Louisiana.[2] Mr. Dimitri had purchased a new table saw and gave the |4boxed table saw to Mr. Chaplain, and his son, Kyle.[3] Kyle testified in his deposition *225 that he helped assemble the table saw.[4] Although a blade guard was provided by the manufacturer, the table saw was assembled without it. Mr, Chaplain stated that certain cuts could not be made with the blade guard installed.[5] Kyle also testified that most of the time the new table saw was used without the blade guard.
On the morning of the accident, Mr. Dimitri was on the job site.[6] At the time of the accident, Mr. Chaplain was using the table saw in order to cut a small notch in the prefinished wood floorboard; he had been doing this work for over two days before the accident occurred. Mr. Chaplain knew the blade guard was not in place. He reached across the saw blade and dropped the wood onto the spinning blade. He held the board on the blade with his left hand behind the table and his right hand in front of the blade. This placed the middle of the wood onto the spinning blade. Unfortunately, the floorboard “kicked back,” causing Mr. Chaplain’s injuries.
Initially, Mr. Chaplain was represented by counsel, who withdrew from the repre-. sentation on 5 September 2012, In the latter part of 2012, Mr. Chaplain became incarcerated and filed, .an In Forma Pau-peris Affidavit with the district |ficourt; he has since represented himself. Mr. Chaplain represented himself when he opposed Mr. Dimitri’s original motion for summary judgment and the motion to re-urge the same.
When he filed his oppositions and various replies, Mr. Chaplain did not attach any evidence to rebut the assertions by Mr. Dimitri or otherwise create a genu-' ine issue of material fact. Mr. Chaplain attaches numerous exhibits to his appellant’s brief, which, if introduced in opposition to the motion for summary judgment,, may have created issues of fact, thereby defeating summary judgment. However, we cannot consider attachments to his brief, as they are not part of the trial court record. In Board of Directors of the Industrial Development Board of the City of New Orleans v. All Taxpayers, Property Owners, Citizens of the City of New Orleans, 03-0827, p. 4 (La.App. 4 Cir. 5/29/03), 848 So.2d 733, 737, we stated:
While we admit that the evidence submitted by the appellants is potentially disturbing, this court is a court of record, which must limit its review to the evidence in the record before it. Ventura v. Rubio, 2000-0682, pp. 3-4 (La.App. 4 Cir. 3/16/01), 785 So.2d 880, 885. Pursuant to La. C.C.P. art. 2164, an appellate court must render ,a decision upon the record on appeal. The record on this appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments and other rulings, unless otherwise designated. La. C.C.P. arts. 2127 and 2128'. An appellate court cannot review evidence that is not in the record' on appeal and cannot receive new evidence. Augustus v. St. Mary Parish School Board, 95-2498, p. 16 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1156. The appellate briefs or motions of parties and attachments thereto are not a part of the record on appeal, and this court has no authority to consider on appeal facts referred | r,to therein, or in exhibits *226 attached thereto, if those facts are not in the record on appeal. Id.
Consequently, based on the appellate record and the facts contained therein, we find that Mr. Dimitri demonstrated that no issue of material fact exists and that Mr. Chaplain failed to carry his burden of proving that he could be successful at a trial on the merits.
Only because Mr. Chaplain is representing himself, we will, however, briefly discuss Mr. Chaplain’s assignment of errors on appeal.
As noted earlier, Mr. Chaplain sued for negligence under La. C.C. art. 2317 and 2317.1. La. C.C. art. 2317 states:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2317.1 continues in pertinent part:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
In Hayes v. Allstate Ins. Co., 06-0264, pp. 2-3 (La.App. 4 Cir. 12/13/06), 947 So.2d 792, 794-95, we stated:
Before a defendant can be held liable under art. 2317, the plaintiff must prove that 1) the thing which caused damage was in the defendant’s custody and control (garde); 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by a defect. Rolf v. Wal-Mart Stores, Inc., 00-1720, p. 3 (La.App. 5 Cir. 2/14/01), 782 So.2d 15, 16, citing Socoito v. City of New Orleans, 579 So.2d 931, 937 (La.1991). Additionally, La. C.C. art. 2317.1 adds the requirement that the injured plaintiff prove that |7the owner/custodian “knew or, in the exercise of reasonable care, should have known” of the unreasonable risk of harm, and “that the damage could have been prevented by the exercise of reasonable care, and that [the owner/custodian] failed to exercise such reasonable care.” Id.
In the instant case, Mr. Chaplain’s own testimony indicates that the table saw in question was under his control at the time of the accident. In addition, Mr. Chaplain did not prove that the table saw had a defect much less that Mr. Dimitri knew of a defect. The accident occurred because the blade guard was not on the table saw, a fact of which Mr. Chaplain was well aware. He chose to use the table saw while admitting that he had other tools at his disposal to perform the task. He testified that the cut he was performing could not be made with the blade guard in place. Thus, he was well aware of the dangers posed by using the saw without the guard. We find that the trial court correctly granted summary judgment in this case.
Finally, Mr. Chaplain claims that he was Mr. Dimitri’s employee and should have received workers’ compensation for his injuries, but because no workers’ compensation was purchased by Mr. Dimitri, he can proceed in tort. The trial court denied Mr. Chaplain’s original motion for summary judgment finding a genuine issue of material fact concerning Mr. Chaplain’s employment status as an employee or independent contractor.
*227 Mr. Chaplain has never pleaded that he was an employee of Mr. Dimitri in his petition that was drafted by his lawyer. He did not ask for workers’ compensation in the alternative to his claims in tort and/or file a claim for workers’ Iscompensation;[7] that cause of action is apparently now prescribed.[8] We find that the claim was never properly before the trial court and we decline to address it on appeal.
We recognize that this was a tragic accident for Mr. Chaplain such that his career in carpentry may well be over. However, after reading the record before us, it appears that what happened was an accident for which no one is legally responsible.
Based on the foregoing, we affirm the summary judgment rendered by the trial court in favor of Mr. Dimitri and against Mr. Chaplain.

AFFIRMED.

. No writ or appeal was filed by Mr. Chaplain challenging the dismissal of Makita.

. Based on the record, the terms of Mr. Chaplain's employment — whether he was an employee or sub-contractor, are unclear. In the hearing for the motion for summary judgment, the defense stated that no IRS Form 1099 or Form W-2 exist; the record reflects that Mr. Chaplain was paid in cash. Mr. Chaplain also stated that he had not filed taxes for at least the past two years.

. Mr. Chaplain had complained about the older table saw.

. It is not clear with whom Kyle Chaplain assembled the table saw; however, this is not a genuine material fact.

. If the cut is thicker than the blade guard can handle, the blade guard will be removed, or not added in the assemblage of a table saw. Having the blade guard, while making such a cut, does not allow enough clearance.

.It is unclear exactly where Mr. Dimitri was when the a'ccident took place.

. A Louisiana district court has no jurisdiction to hear a claim for workers’ compensation.

. La. R.S. 23:1209 A(l) states:
In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. [Emphasis supplied.]